UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | NO. 3:24-mj-01257 |
| v. | ) | |
| | ) | JUDGE RICHARDSON |
| RICHARD PAYNE | ) | |
| | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Appellant, Richard Payne, appeals the judgment (Doc. No. 46) in this criminal case entered by the Magistrate Judge on October 6, 2025. Appellant filed a timely notice of appeal (Doc. No. 49) on October 16, 2025. Appellant subsequently filed a brief (Doc. No. 61) in support of the appeal. The United States of America ("Government") filed a response (Doc. No. 62), therein contending that the Magistrate Judge's judgment should be affirmed. Appellant did not file a reply to the Government's response, and the time to do so has now passed. The Court has jurisdiction to hear this appeal pursuant to 18 U.S.C. § 3402. *See also* Fed. R. Crim. P. 58(g)(2). The appeal is ripe for the Court's review.

For the reasons discussed below, the judgment of the Magistrate Judge is **AFFIRMED**.

BACKGROUND

**I. Procedural Background and Nature of the At-Issue Offenses on Appeal**

This is an appeal of Appellant's conviction, following a bench trial before the Magistrate Judge, for failure to depart premises by unauthorized persons in violation of 38 C.F.R. §

1.218(b)(12) and for disorderly conduct in violation of 38 C.F.R. § 1.218(b)(11).[1] (Doc. No. 46 at 2).

Each of these two offenses falls within the scope of 38 C.F.R. § 1.218(a)(5), which generally governs security of facilities run by the Department of Veterans Affairs ("VA"). As relevant here, 38 C.F.R. § 1.218(a) sets forth the general rules of conduct and specifically prohibits causing a disturbance on VA property. 38 C.F.R. § 1.218(a)(5) provides, in full:

> Conduct on property which creates loud or unusual noise, which unreasonably obstructs the usual use of entrances, foyers, lobbies, corridors, officers, elevators, stairways or parking lots; which otherwise impedes or disrupts the performance of official duties by Government employees which prevents one from obtaining medical or other services provided on the property in a timely matter; or the use of loud, abusive, or otherwise improper language; or unwarranted loitering, sleeping, or assembly is prohibited. In addition to measures designed to secure voluntary terminations of violations of this paragraph the head of the facility or designee may cause the issuance of orders for persons who are creating a disturbance to depart the property. Failure to leave the premises when so ordered constitutes a further disturbance within the meaning of this rule, and the offender is subject to arrest and removal from the premises.

38 C.F.R. § 1.218(a)(5). The prohibition applies to all property under the charge and control of the VA and to all persons entering in or on such property. *Id.*

38 C.F.R § 1.218(b) establishes a schedule of offenses and their corresponding penalties for committing an offense under 38 C.F.R § 1.218(a).[2] The penalty under 38 C.F.R. §1.218(b)(11)

---

[1]In this action, Appellant was also charged with unauthorized loitering in violation of 38 C.F.R. § 1.218(b)(13). The Magistrate Judge acquitted Appellant of this charge based on a finding that Appellant had a "stated reason" for remaining on the premises, thus failing to satisfy the statutory definition of loitering—which requires "remain[ing] there for no apparent reason." (Doc. No. 46 at 6-8). Neither Appellant nor the Government challenges on appeal the Magistrate Judge's decision on this charge. (Doc. No. 61 at 1:3-1:6). And so, the Court herein does not further analyze this particular charge.

[2] Appellant was specifically charged under the penalty sections of the regulations in question (i.e., 38 C.F.R. §1.218(b)(11) for disorderly conduct and 38 C.F.R. §1.218(b)(12) for failure to depart) rather than 38 C.F.R. §1.218(a)(5). However, the language of the penalty section for each offense is similar to that of 38 C.F.R. §1.218(a)(5) and the penalty sections and 38 C.F.R. §1.218(a)(5) explicitly prohibit the conduct of which Appellant was charged. (Doc. No. 50 at 1, fn. 1 (citing *United States v. Puch*, Case No. 3:19-CR-00130, 3:18-PO-00062, 2020 WL 905268 at *5 (S.D. Ohio Feb. 25, 2020) (violation notice need not cite substantive offense section of 38 C.F.R. § 1.218 if it cites the penalty provision (citing *United States v.*

for disorderly conduct—i.e., conduct that creates loud, boisterous, and unusual noise, or obstructs the normal use of entrances, exits, foyers, corridors, elevators, and stairways, or tends to impede or prevent the normal operation of a service or operation of the facility—is a $250 fine. The penalty under §1.218(b)(12) for failure to depart premises by unauthorized persons is a $50 fine.

The parties submitted an agreed statement of the elements for each charged offense, which the Magistrate Judge accepted.[3] (Doc. No. 41; Doc. No. 46 at 6). The parties stipulated that the crime of failure to depart premises by an unauthorized person under §1.218(b)(12) has two elements: (1) the defendant was subject to an order to depart property under the charge and control of the VA; and (2) he knowingly failed to leave the premises when so ordered. (Doc. No. 41 at 2; Doc. No. 46 at 6; Doc. No. 51 at 12:8-12:14). Further, the parties stipulated that the crime of disorderly conduct under 38 C.F.R. § 1.218(b)(11) has two elements: (1) the defendant knowingly engaged in the conduct at issue on property under the charge and control of the VA; and (2) such conduct (a) created loud, boisterous, and unusual noise; or (b) unreasonably obstructed the normal use of entrances, exits, foyers, offices, corridors, elevators, or stairways; or (c) tended to impede

---

*Williams*, 892 F.2d 1044, 1990 U.S. App. LEXIS 195, at *2 (6th Cir. 1990))))). Given these circumstances and for the sake of clarity, the Court will refer to each charge against Defendant conviction by reference to its penalty provision (i.e., 38 C.F.R. §1.218(b)(11) for disorderly conduct and 38 C.F.R. §1.218(b)(12) for failure to depart).

[3] The Court is not entirely convinced that it was proper for the Magistrate Judge to rely on the parties' agreed elements of the offenses without conducting her own independent evaluation of these elements. Interpretation of the elements of a criminal statute is undoubtedly a question of law. Generally, stipulations concerning questions of law—and in particular stipulations involving statutory interpretation—are non-binding on the court, and independent analysis is (at least sometimes) necessary. *United States v. Reed*, 163 F.4th 338, 371 (6th Cir. 2025); *United States v. Wilson*, 978 F.3d 990, 996 (6th Cir. 2020) ("We are not bound to accept . . . what in effect was a stipulation on a question of law[,] [t]he role of the judicial branch is to apply statutory language and we cannot cede our authority to interpret statutes to the parties or their attorneys."). Here, the Magistrate Judge referred to (and relied on) the parties' agreed statement of the elements, but the record does not expressly reflect independent evaluation as to whether those elements were accurate. In any event, upon independent review of relevant C.F.R. provisions, the Court also concludes that the elements of the offenses of failure to depart under 38 C.F.R. § 1.218(b)(12) and disorderly conduct under 38 C.F.R. § 1.218(b)(11) are just as the Magistrate Judge (and the parties) found.

or prevent the normal operation of a service or operation of the facility. (Doc. No. 41 at 4; Doc. No. 46 at 6; Doc. No. 51 at 11:21-12:7). Importantly, and as the Court explains below, a defendant's conduct satisfies the second element only if that conduct satisfies one or more of sub-elements (a), (b), or (c) of the second element[4] *and also* would tend to disturb the routine operations of a VA facility.

The bench trial took place on September 11, 2025. (Doc. No. 50). At trial, both witness testimony (Doc. No. 50 at 6-49, 59-77) and Government Exhibit 1,[5] which is composed of footage from the body camera of police officer Anthony Jelic, (*Id.* at 9:2-9:8), were admitted into evidence. After the close of the Government's case, Appellant moved for acquittal on all charges, arguing that the Government failed to meet its burden of proving beyond a reasonable doubt that he was guilty. (Doc. No. 50 at 52:9-55:3; Doc. No. 51 at 12:21-12:25). The Magistrate Judge found the Government had satisfied its burden of proving beyond a reasonable doubt that Appellant was guilty of violating 38 C.F.R. § 1.218(b)(12) (for failure to depart premises) and 38 C.F.R. § 1.218(b)(11) (for disorderly conduct). (Doc. No. 46 at 8-9). The Magistrate Judge granted Appellant's motion for acquittal on a third charge, discussed in a footnote above, for unauthorized loitering. (Doc. No. 50 at 8; Doc. No. 51 at 13:10-14:11). Appellant was sentenced to a monetary penalty of $100 dollars plus a $30 processing fee, to be suspended for six (6) months and waived

---

[4] The Court herein refers to the three options for satisfying the second element of 38 C.F.R. § 1.218(b)(11) as "sub-elements." As made clear elsewhere herein, each of these sub-elements is an *alternative* for satisfying that second element; only one of these three needs to be satisfied.

[5] Government Exhibit 1 was admitted into evidence as an authenticated CD ("compact disk"), signed by Officer Jelic. The CD contains a true and accurate partial copy of Officer Jelic's body camera footage from June 18, 2024 (the date of the altercation between Appellant and the Officers Jelic and Evans) at the approximate time of the altercation with Appellant. This exhibit will hereinafter be referenced as "Govt. Exhibit 1 at 00:00-00:00" with the timestamp range indicating the relevant portion of the recording.

if no new conduct-related Veteran Affairs Medical Center ("VAMC") citations are received. (Doc. No. 46 at 11-12).

Appellant has appealed these convictions, claiming the evidence presented before the Magistrate Judge was insufficient to convict him of either failure to depart premises under 38 C.F.R § 1.218(b)(12) or disorderly conduct under 38 C.F.R. § 1.218(b)(11). (Doc. No. 61 at 3, 6).

## II. Evidence Presented at Trial

The parties do not object to the Magistrate Judge's general summation of what the evidence introduced at trial was (and showed), and the Court repeats that summation verbatim immediately below for context.

> The defendant Richard Payne is a veteran of the United States Navy with a four-year service record. Payne suffers from chronic post-traumatic stress disorder ("PTSD") for which he receives services from the VAMC in Nashville, Tennessee. For some time, Payne also received suboxone therapy at the VAMC, but he no longer receives services through that particular VAMC clinic.
>
> Payne is subject to a behavioral restriction limiting his presence on the VAMC campus to scheduled appointments or for emergency room care. Otherwise, he is not allowed on the VAMC property. Behavioral restrictions of this nature, including specifically those for Payne, are issued by the VAMC disruptive behavior committee and are designed and tailored to mitigate disruptions to VAMC operations by the individual subject to the restrictions. Payne's restrictions are in place due to events that have occurred over more than the past year. Payne is not the only veteran treated at the VAMC who is subject to a behavior restriction.
>
> On June 18, 2025, Payne had a scheduled appointment with a social worker at the mental health annex on the VAMC campus in Nashville, Tennessee. He checked in with the police operations office and was escorted to his appointment.
>
> Following Payne's appointment, VAMC Police Officer Jelic, who has been a VAMC police officer for approximately three years, with prior experience as a Department of Defense police officer and as military police with the Marine Corp[s], was dispatched to the VAMC mental health annex to assist in escorting Payne off the premises following his appointment. Another VAMC police officer, Officer Evans, was also present. Officer Jelic's body camera footage, which was admitted as an exhibit in the government's direct case, shows that Payne was calm and orderly while he was at the mental health annex.
>
> Officer Jelic and Officer Evans followed Payne out of the mental health annex to leave VAMC premises, at approximately 1:37 p.m., based on the understanding that Payne had no other appointments at the VAMC. When Payne exited the mental health annex, he did not leave VAMC property. Rather, Payne

walked to another area of VAMC, the ACRE building, where VAMC patients receive primary care services. Payne was asked where he was going and responded, "it's a need to know thing." Officer Jelic replied that he needed to know and reminded Payne that he was supposed to be off VAMC property.

In the ACRE building, Payne went to the reception desk in Pod B, which is the patient check-in for primary care appointments. At approximately 1:39 p.m., Officer Jelic attempted to confirm with the employee at the check-in desk that Payne did not have another appointment that day, to which Payne raised an objection based on a posted policy that "the VA respects your privacy."

One patient was present in the Pod B waiting room at the time. Other individuals came in and remained in the waiting room during the events that unfolded between Payne and Officers Jelic and Evans. Initially, Payne was relatively calm when in the lobby of Pod B. He was instructed by Officer Jelic that he had no right to be on VAMC premises without an appointment. Payne objected, maintaining that the VAMC is a public place where he has a right to peaceably assemble under the First Amendment. Officer Evans reminded Payne that he was under a restriction, which Payne disputed.

Both officers remained composed and Payne remained generally non-combative. Payne continued to insist that he could remain on premises, saying "what makes you think that you know better than the founding fathers, to try to restrict my inalienable rights, huh?" Then, at approximately 1:40 p.m., Payne began to taunt the officers, "talking all that trash just a second ago, where you at with all that trash talk?"

Officer Jelic confirmed that Payne had no appointment and instructed him to leave. Payne refused to do so, saying he was going to say hi to someone. When told if he did not leave, he would be arrested, Payne responded, "for what, for what am I going to be arrested?" He continued to insist that the VAMC is a public place and [that] he was peaceably assembled.

By 1:41 p.m., however, the situation began to deteriorate. Officer Jelic repeatedly asked Payne to "please just leave." When Officer Evans instructed Payne to leave, Payne again refused because he was going to say hi to his friend. When instructed that he could not stay, Payne became agitated, balling a fist (he was recording Officer Evans with his cell phone in his other hand) and spreading his feet into a wider stance, with one foot in front of the other. He repeatedly stated to the police officers, "don't assault me." He also began to use profanity, calling the police officers "bitch," and "fucking f*****t." The police officers still instructed Payne to gather his belongs and leave. Payne continued his loud profanities, calling Officer Evans a "fucking bitch," a "fucking kindergarten fucking f*****t cop" who needed to "go suck his supervisor's d**k again today, you fucking f*****t."

After Payne refused to comply with the police officers' repeated instructions to leave the premises, Officer Jelic approached him and attempted to place him in handcuffs. During the altercation that ensued over the next two minutes or so, Officer Evans deployed oleoresin capsicum ("OC"), commonly known as pepper spray. Throughout, the police officers instructed Payne to "stop

> resisting" and he responded that he was not resisting. While the police officers were attempting to handcuff Payne, a trashcan was upended.
>
> Eventually, at approximately 1:42 p.m., Payne was placed in handcuffs. Once Payne was restrained, Officer Evans reprimanded that Payne's continued disruptive behavior would no longer be tolerated and that "from now on" anytime he came into the VAMC and "showed out" the way he was doing, he would be arrested. Payne continued to call the police officers "fucking f*****t," and "fucking bitch" and told them to "fuck off." During the duration of the altercation between the police officers and Payne, there were other individuals in the waiting room and hallways of Pod B. At least one individual stopped to watch the incident.
>
> Payne was treated in the ER for an eye wash and decontamination from the pepper spray and then taken to the police operations area where he was placed in a holding cell and the instant citations for unauthorized loitering, failure to leave premises, and disorderly conduct were issued.

(Doc. No. 46 at 2-5).[6]

Appellant has not asserted any error in the Magistrate Judge's general discussion of the underlying evidence presented at trial, but instead asserts that the evidence presented at the trial was insufficient to support Appellant's conviction of the charged offenses. (Doc. No. 61 at 3, 6). Given the nature of Appellant's assertion, the Court will briefly discuss the Magistrate Judge's specific respective findings regarding the two charges of which Appellant was convicted and Appellant's challenges thereto.

The Magistrate Judge concluded that Appellant's conduct satisfied the elements of failure to depart premises because (according to the Magistrate Judge) Appellant was subject to an order to depart the VAMC due to the Officers' repeated requests for Appellant to leave the premises, and Appellant knowingly refused to depart the VAMC despite that order because he believed that he had a constitutional right to be there. (Doc. No. 46 at 8-9, Doc. No. 51 at 14:15-14:24). Appellant challenges the conviction for failure to depart premises by asserting that (1) there was no proof to reflect that Appellant was restricted from being on VAMC property and walking into the ACRE

[6] Officer Evans and Officer Jelic will hereinafter be collectively referred to as the "Officers".

building, and (2) Appellant would have voluntarily departed if given the chance. (Doc. No. 61 at 5).

The Magistrate Judge concluded that Appellant's conduct satisfied the elements of disorderly conduct because (according to the Magistrate Judge) Appellant's loud, boisterous, and abusive language disrupted the peace and good order of the VAMC, Appellant's aggressive conduct necessitated officer intervention such that VAMC officers could not attend to their other duties, VAMC employees and patients stood in the hallway watching the altercation, and the standoff had the potential to trigger psychological reactions from other patients. (Doc. No. 46 at 9; Doc. No. 51 at 15:23-17:13). Additionally, the Magistrate Judge found that the Officers reacted only *after* Appellant escalated the situation in the lobby of Pod B with his loud, profane, and derisive language. (Doc. No. 51 at 17:7-17:13). Appellant challenges the conviction for disorderly conduct by asserting that (1) he did not create the disturbance, but was instead responding to officer escalation, and (2) the operations of the VAMC facility were not halted or impeded in any way. (Doc. No. 61 at 6-7).

STANDARD OF REVIEW

"In all cases of conviction by a United States magistrate [judge,] an appeal of right shall lie from the judgment of the magistrate [judge] to a judge of the district court of the district in which the offense was committed." 18 U.S.C. § 3402. In such an appeal, "a defendant is not entitled to a trial de novo by a district judge." Fed. R. Crim. P. 58(g)(2)(D). "The scope of the appeal is the same as in an appeal to the court of appeals from a judgment entered by a district judge." *Id.* Thus, a "district court judge is required to apply the same standard of review to the magistrate judge's decision as [a circuit court] would apply to a decision that originated from a district court judge." *United States v. Evans*, 581 F.3d 333, 338 n.4 (6th Cir. 2009). In considering the appeal of a

magistrate judge's decision to convict, the district judge reviews any legal determinations by the magistrate judge de novo and any findings of fact for clear error. *Id.* A factual determination is "clearly erroneous" when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 396 (1948); *see also United States v. Ellis,* 938 F.3d 757, 761 (6th Cir. 2019) (citing *United States v. Vasquez*, 352 F.3d 1067, 1070 (6th Cir. 2003)).

When a defendant challenges his conviction on the basis that there was insufficient evidence to convict him, the district judge does not sit as a trier of fact. *United States v. Gallo*, 763 F.2d 1504, 1518 (6th Cir. 1985). Rather, the district judge "view[s] the evidence from a perspective most favorable to the prosecution[,]" *United States v. Williams*, 892 F.2d 1044, 1990 U.S. App. LEXIS 195, at *8 (6th Cir. 1990), and shall let the verdict stand "if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). In other words, if any rational trier of fact could have found the essential elements of the crime satisfied beyond a reasonable doubt, then the conviction must be upheld. *United States v. White*, 932 F.2d 588, 589 (6th Cir. 1991). In considering a challenge to the sufficiency of the evidence, the government is given the "benefit of all reasonable inferences[,]" and reviewing courts must "refrain from independently judging the weight of the evidence." *United States v. Suarez*, 263 F.3d 468, 476 (6th Cir. 2001); *see also United States v. Martines*, 430 F.3d 317, 330 (6th Cir. 2005) (the reviewing court does not weigh the evidence, assess the credibility of witnesses, or substitute its judgment for that of the trier of fact). The upshot is that "[a] defendant claiming insufficiency of the evidence bears a very heavy

burden[,]" and notably, "circumstantial evidence alone is sufficient to sustain a conviction under this deferential standard of review." *United States v. Fekete*, 535 F.3d 471, 476 (6th Cir. 2008).

## ANALYSIS

As indicated above, Appellant asserts that the evidence was not sufficient to support his convictions under either 38 C.F.R. § 1.218(b)(12) (for failure to depart) and 38 C.F.R. § 1.218(b)(11) (for disorderly conduct). (Doc. No. 61 at 3, 6). The Court addresses each conviction in turn.

### I. Failure to Depart Premises, in violation of 38 C.F.R. § 1.218(b)(12)

As indicated above, the parties and the Magistrate Judge all agreed—and the Court independently discerns—that the offense of failure to depart premises under 38 C.F.R. § 1.218(b)(12) has two elements: (1) the defendant was subject to an order to depart property under the charge and control of the VA; and (2) the defendant knowingly failed to leave the premises when so ordered. (Doc. No. 41 at 2).[7]

Viewing the evidence in the light most favorable to the Government as required, the Court concludes that a rational trier of fact could have found Appellant guilty of failure to depart premises pursuant to 38 C.F.R. § 1.218(b)(12) beyond a reasonable doubt. In view of the evidence presented at the trial, the Court finds support for the Magistrate Judge's conclusion that both elements of this offense were satisfied, i.e., that Appellant (1) was subject to a lawful order to leave the premises by VA police in accordance with his behavioral restriction (Doc. No. 46 at 9), and (2) knowingly failed to leave the premises when ordered to do so. (*Id.*). The evidence at trial included that

[7] The Magistrate Judge concluded there was no question that the VAMC is under the operation and control of the VA as required for the elements of both offenses at issue here. No evidence was presented, and no contention was raised by the parties, that the VAMC is anything other than under the charge and control of the VA. (Doc. No. 51 at 13:13-13:19). And so, the Court accepts that the VAMC is under the operation and control of the VA.

Appellant was subject to a behavioral restriction lawfully issued by the VA behavioral commission for prior conduct. (Doc. No. 50 at 14:9-14:17, Doc. No. 46 at 2). Indeed, Officer Jelic testified at trial that at the time of the altercation between Appellant and the Officers, Officer Jelic had familiarity with Appellant and his behavioral restriction, having dealt with Appellant over the past year. (Doc. No. 50 at 13:15-13:20). Additionally, at trial Officer Jelic testified both as to the existence and the scope of Appellant's behavioral restriction in sufficient detail for a rational trier of fact to conclude that such restriction was in place. (Doc. No. 50 at 12:11-14:22).

Further, the evidence indicates that upon conclusion of Appellant's scheduled appointment, the Officers attempted to escort Appellant off VAMC property, which is a location under the charge and control of the VA. (Doc. No. 46 at 8; Govt. Exhibit 1 at 00:48-01:10; Doc. No. 50 at 18:1-18:6). And the evidence further indicates that when Appellant failed to leave VAMC property at the conclusion of his appointment, the Officers reminded Appellant of his behavioral restriction and repeatedly ordered him to leave VAMC property. (Doc. No. 46 at 9; Govt. Exhibit 1 at 01:20-01:36). Both testimony at trial and Government Exhibit 1 indicate that despite numerous reminders by the Officers for Appellant to act in accordance with his behavioral restriction and requests for him to vacate the premises, Appellant continued to occupy VAMC property. (Doc. No. 50 at 21:21-21:23, 22:25-23:2; Govt. Exhibit 1 at 04:26-04:50). Furthermore, Appellant outright refused to leave the premises, asserting the belief that he had a constitutional right to be at the VAMC. (Govt. Exhibit 1 at 04:26-05:00; Doc. No. 46 at 9). Therefore, the Court finds that a rational trier of fact could have concluded that Appellant was subject to an order to depart property (i.e., VAMC) that was under the charge and control of the VA (that is, the first element of the offense), and thereafter knowingly refused to leave when so ordered (that is, the second element of the offense).

Appellant's argument to the contrary is unavailing. The argument seems to be that because (according to Appellant) there was no express prohibition in Appellant's behavioral restriction that prevented him from walking the short distance to the ACRE building for social purposes, any order directing Appellant to depart was not lawful. (Doc. No. 61 at 5).[8] But Appellant has neither presented any evidence that would support such an argument nor provided citation to legal authority that would support such an argument. It is Appellant's burden to show that the Government failed to provide sufficient evidence to support the Magistrate Judge's decision. Appellant's attempt to meet this burden consists solely of asserting that there was "no proof" offered to show that Appellant was restricted from walking to the ACRE building. (Doc. No. 61 at 5). This assertion is baseless, and indeed the evidence at trial reflects the contrary; as explained in testimony at trial, the behavioral restriction allows two circumstances in which Appellant can be on the VAMC property (i.e., for a scheduled appointment or to be seen at the emergency room) and forbids presence for any other reason (which would include a social detour to the ACRE building to say hello to a friend). (Doc. No. 50 at 14:14-14:17, Doc. No. 46 at 8).

Summing up, upon review of the evidence submitted at trial (including the body camera footage comprising Government Exhibit 1 and witness testimony), the Court finds that a rational trier of fact could have found both elements of failure to depart under 38 C.F.R. § 1.218(b)(12) satisfied beyond a reasonable doubt. Put another way, the Court does not have a "definite and firm conviction" a mistake in judgment has been made. *Ellis*, 938 F.3d at 761. Thus, the Court affirms Appellant's conviction for failure to depart under 38 C.F.R. § 1.218(b)(12).

---

[8] Although the trial transcript does not reveal the precise terms of Appellant's behavioral restriction, the testimony at trial did indicate that Appellant's restriction "limit[ed] his presence on the VAMC campus to scheduled appointments or for emergency room care [and] [o]therwise, [did] not allow [him] on the VAMC property." (Doc. No. 50 at 14:14-14:17; Doc. No. 46 at 2).

## II. Disorderly Conduct, in violation of 38 C.F.R. § 1.218(b)(11)

As indicated above, the parties and the Magistrate Judge agreed—and the Court independently discerns—that the offense of disorderly conduct under 38 C.F.R. § 1.218(b)(11) has two elements: (1) the defendant knowingly engaged in the conduct at issue on property under the charge and control of the VA, and (2) such conduct (a) created a loud, boisterous, and unusual noise; or (b) unreasonably obstructed the normal use of entrances, exits, foyers, offices, corridors, elevators, or stairways; or (c) tended to impede or prevent the normal operation of a service or operation of the facility. (Doc. No. 41 at 4). The second element is disjunctive; this means that conduct that satisfies any one or more of the three listed sub-elements—(a), (b), or (c)—of the second element is sufficient to satisfy the second element of the offense of disorderly conduct, if that conduct also tends to disturb the routine operations of the VA hospital.[9] (Doc. No. 50 at 103:16-104:5). Taken together, the regulations establishing the offense of disorderly conduct "warn a citizen against 'loud, boisterous, and unusual noise' and against any behavior which is otherwise disruptive to the VA hospital's normal functioning." *Williams*, 1990 U.S. App. LEXIS 195, at *5.

[9] Based on the Court's review of Sixth Circuit precedent, it seems a defendant's conduct satisfies the second element of the offense of disorderly conduct in violation of 38 C.F.R. §§ 1.218(a) and (b)(11), where that conduct falls into at least one of the listed sub-elements in the second element, and also tends to disturb the VA's ordinary operations. The Court acknowledges that in the parties' agreed statement of the elements, the satisfaction of any sub-element under the second element is sufficient to find satisfaction of the second element, but the Sixth Circuit's precedent reflects that these regulations proscribe "any behavior which is otherwise disruptive to the VA hospital's normal functioning." *Williams*, 1990 U.S. App. LEXIS 195, at *5. Squaring *Williams* and the second element of this offense, the notion seems to be that the second element of the offense can be satisfied so long as: (1) a defendant's conduct created a loud, boisterous, and unusual noise, a defendant's conduct unreasonably obstructed the normal use of entrances, exits, foyers, offices, corridors, elevators, or stairways, or a defendant's conduct tended to impede or prevent the normal operation of a service or operation of the facility; and (2) the aforementioned conduct *also* tended to disturb the routine operations of a VA hospital. Therefore, the Court views the "tendency to disturb" as a qualifier whereby satisfaction of the second element requires conduct that (in addition to satisfying one of the three sub-elements of the second element) would tend to disturb the routine operations of a VA facility.

And "the controlling standard of conduct is reasonably clear: if the conduct would tend to disturb the routine operations of a VA hospital, such conduct is prohibited." *Id.* at *6.

Although the Government did not expressly identify at trial the sub-element(s) of the second element upon which the conviction relied, the Magistrate Judge found Appellant had engaged in conduct that was loud and boisterous and tended to impede the operations of the VAMC; thus, the Magistrate Judge implied that Appellant's conviction falls under both sub-element (a) *and* sub-element (c) of the second element. (Doc. No. 51 at 16:1-16:6).

Here, viewing the evidence in the light most favorable to the Government, the Court concludes that a rational trier of fact could have found Appellant guilty beyond a reasonable doubt of disorderly conduct pursuant to 38 C.F.R. § 1.218(b)(11). Evidence introduced at trial indicates that Appellant's conduct at issue (1) took place on property under the charge and control of the VA, and (2) was loud, boisterous, and tended to impede the normal operation of the VAMC. Appellant does not dispute that a disturbance occurred within Pod B of the ACRE building. (Doc. No. 61 at 6). As Appellant admits, the standard for "disruption of operation" is relatively low; the Government need only show a "tendency" to disturb the routine operations of a VA hospital, like the VAMC. [10] (Doc. No. 61 at 7); *see also Williams,* 1990 U.S. App. LEXIS 195, at *6. Witness testimony and officer body camera footage (i.e., the footage found in Government Exhibit 1) presented at trial make out that Appellant's conduct took place on VAMC property and that Appellant engaged in loud, abusive, and otherwise improper language. (Doc. No. 46 at 9; Govt. Exhibit 1 at 04:50 – 07:05). The evidence also makes out that Appellant resisted the Officers,

---

[10] Although the Sixth Circuit has not squarely addressed the full definition of "tend to disturb operations", the Sixth Circuit has found conduct that creates "'alarm', 'annoyance', and 'risk of physical harm' is 'disorderly conduct' within the meaning of § 1.218(b)(11)." *Williams*, 1990 U.S. App. LEXIS 195, at *8 (finding that despite no actual agitation of patients, the use of profanities, "being loud" while in the admitting area, making physical threats, and evidence that a confrontation with an officer distracted medical personnel from their duties was sufficient to find disorderly conduct under the statute).

which resulted in the upending of a trash can and deployment of "OC" spray, further disrupting the peaceful and orderly operations of the VAMC. (Doc. No. 46 at 9; Govt. Exhibit 1 at 04:50-07:05). Witness testimony also indicates that due to Appellant's actions, the VAMC was unable to check in patients as normal, having to work around the disturbance to conduct patient check-in. (Doc. No. 50 at 34:10-35:8, 94:18-94:23).

Evidence also shows that Appellant's shouting, name-calling, and disruptive interaction took place directly in front of the patient check-in desk and resulted in VAMC employees and patients standing in the hallway watching the altercation unfold. (Govt. Exhibit 1 at 02:09-09:30; Doc. No. 50 at 21:10-21:15). Such events altered normal check-in procedures due to patients and staff seeking to avoid the altercation, ultimately interfering with the VAMC's ability to commence patient care during the interaction. (Doc. No. 50 at 35:11-36:8; Doc. No. 46 at 9). Further, the Officers were pulled away from their ordinary duties as VAMC employees to address the disturbance caused by Appellant and forcibly escort him off the premises. (Doc. No. 46 at 9). Put another way, the evidence shows that the operation of the VAMC and of the working personnel there were interrupted by having to mitigate the irritant effects of "OC" spray within the waiting room and proceed with the cleaning procedures that were required as a result of the deployment of the "OC" spray. (Doc. No. 50 at 42:12-44:19). Additionally, as explained by the Magistrate Judge, VAMC is host to patients suffering from PTSD and other psychological conditions that could be triggered or agitated by a disturbance like the one caused by Appellant—a reality that further supports the conclusion that Defendant's conduct tended to further disrupt VAMC's purpose of providing patient care. (Doc. No. 46 at 9).

As relevant here and consistent with the Court's discussion in an earlier footnote, under 38 C.F.R. § 1.218(b)(11), either loud and boisterous conduct (sub-element (a) of the second element

of the offense discussed above) or conduct that otherwise impeded normal operations (sub-element (c) of the second element of the offense discussed above), is sufficient to sustain a conviction under this regulation so long as that conduct tends to disturb routine operations of a VA hospital, in this case the VAMC. *Williams*, 1990 U.S. App. LEXIS 195, at *5. The evidence at trial could have persuaded a reasonable trier of fact to conclude that either or both of these sub-elements were satisfied by Appellant's conduct. The evidence makes out that Appellant engaged in loud and abusive verbal conduct and also stood in front of the check-in desk—in a location at which he was prohibited from being—and refused to leave. Based on both the body camera footage in Government Exhibit 1 and witness testimony presented at trial, the Court finds that a rational trier of fact could have found both that Appellant's conduct qualified as loud and boisterous—thereby satisfying sub-element (a)'s alternative for satisfying the second element—and that this conduct would tend to disturb routine operations at the VAMC. *Williams,* 1990 U.S. App. LEXIS 195, at *6 (finding language that creates "alarm" or "annoyance" is disorderly conduct within the meaning of 38 C.F.R.§ 1.218(b)(11)). Additionally, the evidence indicates that the entirety of the confrontation between Appellant and the Officers occurred directly in front of the patient check-in desk, a fact that could have persuaded a rational trier of fact that the confrontation would tend to cause an interference with ordinary check-in procedures (thereby impeding routine operations)—thus satisfying sub-element (c)'s alternative for satisfying the second element—and that this interference (naturally) would tend to disturb routine operations at the VAMC. Indeed, the evidence indicates that Appellant's conduct ultimately resulted in officer intervention and employees of the VAMC being diverted from their standard operations to avoid the altercation or check in patients around the ensuing altercation. (Doc. No. 46 at 9; Doc. No. 50 at 21:10-21:15; Govt. Exhibit 1 at 02:09-09:30). Although the evidence at trial does not include direct evidence of

a significant halt or impediment to the VAMC's operations, a *significant* interruption is not necessary for a violation of 38 C.F.R. § 1.218(b)(11) to occur. Indeed, to be subject to criminal penalties under that particular paragraph of 38 C.F.R. § 1.218, conduct need only—in addition to satisfying one of the second element's alternative sub-elements—*tend* to disturb the routine operations of a VA hospital. *Williams*, 1990 U.S. App. LEXIS 195, at *6. Therefore, a rational trier of fact could have found that the evidence at trial was sufficient to convict Appellant of the offense of disorderly conduct under 38 C.F.R. § 1.218(b)(11).

Appellant resists this conclusion and argues that the disturbance at the ACRE building was not created by him—stating he would have left the ACRE building if given the chance—and that he engaged in disruptive conduct only after the Officers approached him. (Doc. No. 61 at 5-6; Doc. No. 50 at 54:19-55:3). In other words, Appellant challenges causation. However, in advancing this causation argument, Appellant does not muster specific law and facts in support of this argument. Instead, Appellant engages in a perfunctory and rather conclusory discussion,[11] which is unsupported by citations to case law or the record, that Appellant did not cause the disruption. (Doc. No. 61 at 5, 7, 8). This will not do. It is well-established that "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived" and "[i]t is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 996 (6th Cir. 1997) (citing *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293-94 (1st Cir. 1995)). So, Appellant's argument does not disturb the Court's conclusion as to Appellant's conviction for disorderly conduct.

[11] In fairness to counsel for Appellant, he likely had little to work with in this regard in any event.

Summing up then, in viewing the evidence in the light most favorable to the Government, a rational trier of fact could have found that Appellant's conduct was both loud and boisterous, and resulted in an impediment to the normal operation of the VAMC facility, and that this conduct would have tended to disturb the operations of the VAMC (a VA hospital). The Court is not left with a "definite and firm conviction" that a mistake was made in convicting Appellant of disorderly conduct. *Ellis,* 938 F.3d at 761 (6th Cir. 2019). Accordingly, the Court affirms Appellant's conviction for disorderly conduct under 38 C.F.R. § 1.218(b)(11).

## CONCLUSION

For the reasons discussed herein, Appellant has not carried his "very heavy burden" on this appeal of showing that no rational trier of fact could have found the necessary elements beyond a reasonable doubt. *Fekete*, 535 F.3d at 476; *see also Williams*, 1990 U.S. App. LEXIS 195, at *9; *Vasquez*, 352 F.3d at 1070. Accordingly, the Court **AFFIRMS** the judgment of the Magistrate Judge in its entirety.

IT IS SO ORDERED.

Eli Richardson
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE